IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| Jennifer McWilliams, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-cv-01419-JPH-TAB |
| | ) | |
| Frankton-Lapel Community Schools | ) | |
| Building Corporation; Robert Fields, in | ) | |
| his official capacity as Superintendent of | ) | |
| Frankton-Lapel Community Schools; | ) | |
| Ronda Podzielinski, in her official capacity | ) | |
| as Principal of Frankton Elementary School; | ) | |
| Kimberly Gray, in her official capacity as | ) | |
| the Title I Program/Reading Director for | ) | |
| Frankton-Lapel Community Schools; | ) | |
| Frankton-Lapel Community Schools | ) | |
| Board of School Trustees, | ) | |
| | ) | |
| Defendants. | ) | |

# Defendants' Response to Plaintiff's
# Motion for Preliminary Injunction

Alexander P. Pinegar, Atty. No. 26543-49
Brent R. Borg, Atty. No. 27415-29
Church Church Hittle + Antrim
Two North Ninth Street
Noblesville, IN  46060
317-773-2190
apinegar@cchalaw.com
bborg@cchalaw.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................... 3

FACTS ...................................................................................................... 4

    A. Overview of Plaintiff's employment at
    Frankton Elementary School............................................................ 4

    B. Frankton Elementary School and its use of
    "The Leader in Me" program ........................................................... 6

    C. Plaintiff's February 10, 2020, Facebook comment ..................... 8

    D. Additional concerns with the Plaintiff's Facebook comment
    and her request for preliminary injunction ............................... 10

ARGUMENT ........................................................................................... 12

    A. The Court should apply the typical preliminary injunction
    standard to Plaintiff's retaliation claim ..................................... 12

    B. Plaintiff is not entitled to a preliminary injunction ................. 16

        1. Plaintiff cannot meet her burden on the three-prong
        standard that should apply to her motion. ......................... 16

          a. Plaintiff cannot establish a likelihood of success on the
          merits. ........................................................................... 16

            1. Plaintiff's statements were false and therefore neither
            First Amendment protections nor *Pickering* balancing
            applies. ...................................................................... 17

            2. Even if applied, the *Pickering* balancing test tips in favor
            of the Defendants. ..................................................... 21

          b. Plaintiff cannot establish that she will suffer irreparable
          harm if a preliminary injunction is not entered, nor can she
          establish that traditional legal remedies are inadequate. ........... 24

        2. The harm to the Defendants outweighs the harm to the
        Plaintiff if the preliminary injunction is granted. ............................. 25

CONCLUSION ........................................................................................ 27

The Defendants hereby respond to Plaintiff's Motion for Preliminary Injunction. (Dkt. 7, Filing No. 7.)

# **Introduction**

During the 2019-2020 school year, Frankton-Lapel Community Schools ("FLCS") employed the Plaintiff as a Title I Interventionist at Frankton Elementary School, one of two elementary schools within FLCS. FLCS terminated Plaintiff's employment on February 14, 2020, after Superintendent Robert Fields and Principal Ronda Podzielinski learned of a Facebook comment Plaintiff posted on February 10, 2020, that contained several false statements about the operations at Frankton Elementary School. The Plaintiff's Facebook comment concerned Frankton Elementary School's use of a program called "The Leader in Me." This program, which Plaintiff labeled as "garbage" in her Facebook comment, is a leadership and behavioral model that emphasizes sensible habits like "have a plan" and "listen before you talk" that are common to everyday experience.

In her Facebook comment, the Plaintiff made several statements, including the following:

- that Frankton Elementary School teachers were being evaluated on how they used this program;

- that the staff and school were being graded on how they implemented the program;

- that the staff and the school was going to being mentoring another school on the program;

- that parents have "no clue" about the program; and

- that the program has "literally taken over EVERYTHING."

These statements are false.

Because of Plaintiff's false and disparaging statements in her Facebook comment, FLCS terminated Plaintiff's at-will employment on February 14, 2020. In light of these facts, Plaintiff is not entitled to the extraordinary remedy of preliminary injunctive relief. The central case on which Plaintiff relies does not afford First Amendment protection to statements that are false, and even if one were to assume her statements were true, balancing Plaintiff's First Amendment rights against FLCS' interests establishes that there has been no First Amendment violation. And even if one were to further assume a violation for argument's sake, preliminary injunctive relief is still inappropriate.

For these reasons and as provided in more detail below, the Court should deny Plaintiff's Motion for Preliminary Injunction.

## Facts

### A. Overview of Plaintiff's employment at Frankton Elementary School.

FLCS employed Plaintiff as a Title I Interventionist from August 2019 until it terminated her employment on February 14, 2020. [Defendants' Exhibit 1, Affidavit of Robert Fields ("Fields Aff.") Aff. ¶ 5.] Plaintiff was an at-will employee, was not a teacher, and did not hold a regular teacher's contract with FLCS.[1] [Fields Aff. ¶ 6.] She worked exclusively at Frankton Elementary School, one of two elementary schools within the FLCS school system. [Defendants' Exhibit 2, Affidavit of Ronda Podzielinski ("Podzielinski Aff.") ¶ 4.] FLCS also employed Plaintiff at Frankton Elementary School during the 2018-2019 school year as an instructional assistant. [Podzielinski Aff. ¶ 5.]

---

[1] Indiana law requires that any teacher employed by a public school must have a regular teacher's contract prescribed by the State Superintendent. *See* Ind. Code ch. 20-28-6.

Plaintiff had a child who attended Frankton Elementary School during the 2019-2020 year. [Podzielinski Aff. ¶ 10.]

The *Title I* in Plaintiff's job title refers to Title I of the Elementary and Secondary Education Act. [Fields Aff. ¶ 7.] Under Title I, the federal government distributes funds to those schools and school districts who service a specified percentage of low-income families. [Id.] Schools who seek Title I funding must apply for a grant from the federal government. [Id.] FLCS receives Title I grant money, which its uses to employ seven "Title I Interventionists" and one Director of Reading (co-defendant Kimberly Gray), who directly supervises the seven Title I Interventionists. [Id.] These Title I Interventionists work only at Frankton Elementary School. [Id.] Plaintiff's compensation was funded entirely by Title I grant money. [Id.]

Even though Plaintiff was not a teacher, as a Title I Interventionist she worked directly with students, both in small-group and one-on-one settings, on reteaching and improving reading skills. [Podzielinski Aff. ¶ 7.] Plaintiff was the lead interventionist with second-grade students but also worked with students in other grade levels throughout the entire elementary school. [Id.] She worked Monday to Thursday every week, from 7:30 am to 3:00 p.m. and was paid on an hourly basis. [Podzielinski Aff. ¶ 8.] Her workday consisted of working in classrooms in small-group settings and pulling certain students out of the classroom to work one-on-one with them. [Id.] The students Plaintiff worked with were those Frankton Elementary School had identified as needing one-on-one reading assistance based on certain benchmarks. [Id.] Based on these job duties, Plaintiff would have been aware of how Frankton Elementary School operated and what the general curricula and educational philosophies at Frankton Elementary School were and what they were not. [Podzielinski Aff. ¶ 9.]

**B. Frankton Elementary School and its use of "The Leader in Me" program.**

Beginning during the 2017-2018 school year, Frankton Elementary School has used a program called "The Leader in Me" to help students develop leadership skills and foster positive relationships. [Podzielinski Aff. ¶ 11.] "The Leader in Me" is a program developed by FranklinCovey Education that emphasizes seven habits of leadership and behavior. [Id.] Those principles are:

1. Be proactive (you're in charge)
2. Begin with the end in mind (have a plan)
3. Put first things first (work first, then play)
4. Think win-win (everyone can win)
5. Seek first to understand, then to be understood (listen before you talk)
6. Synergize (together is better)
7. Sharpen the saw (continuous self-improvement)

[Id.]

The Leader in Me is also used at both other public and private schools in central Indiana, including in Delphi, Anderson, Westfield, Carmel, Marshall, Indianapolis, Avon, and Oaklandon. [Podzielinski Aff. ¶ 12.]

The administration at Frankton Elementary School encourages staff to look for opportunities to promote in their classroom the seven habits associated with The Leader in Me. [Podzielinski Aff. ¶ 13.] However, The Leader in Me is not an academic program. [Id.] During each academic quarter, Frankton Elementary School designates one day as a "LEAD Day." [Podzielinski Aff. ¶ 14.] During both the 2018-2019 and 2019-2020 school years, there were four LEAD Days. [Id.] On "LEAD Days" students in Kindergarten through sixth grade are divided into groups of approximately eighteen students, with each group consisting of students from multiple grade levels. [Id.] For one hour on LEAD Days, this group meets together with a staff member. [Id.] Plaintiff

led such a group during the 2019-2020 school year up the point of her termination. [Id.]
During this one hour, the staff member presents to his or her group a lesson based on
The Leader in Me principles. [Id.] This lesson is provided to staff and usually consists of
a PowerPoint with activities, videos, and specific habit information. [Id.]

In addition, teachers are asked to spend approximately ten to fifteen minutes per
day in what is called a "Synergizing Circle." [Id.] This is to provide time to build
community, communicate with others, listen, share goals and successes, and review the
class mission statement. [Id.] Teachers are encouraged, but not required, to discuss The
Leader in Me habits during those sessions. [Id.] However, Principal Podzielinski is
aware that not all teachers consistently have a Synergizing Circle every day and many
teachers do not consistently discuss The Leader in Me principles during those times.
[Id.]

The Frankton Elementary School administration takes several steps to inform
parents of the use of the Leader in Me program. [Podzielinski Aff. ¶ 19.] For example,
The Leader in Me program and its seven habits are identified on the cover of the 2019-
2020 the Parent/Student Handbook. [Podzielinski Aff. ¶ 19; Ex. A.] The second page of
this handbook features a short message from Principal Podzielinski that states: "We are
excited to continue The Leader in Me process to help prepare students to succeed in the
21st century." [Id.] The last page of the handbook contains a chart stating and
explaining the seven habits. [Id.]

In addition, Frankton Elementary School conducted a fund-raiser in the Fall of
2019 to offset the cost of using The Leader in Me for 2019-2020. [Podzielinski Aff. ¶ 19.]
The flier states that the purpose of the fundraiser was for The Leader in Me program.
[Podzielinski Aff. ¶ 19; Ex. B.] Although the fundraiser was optional for parents and

students, many participated, raising enough money to fund the program for the upcoming school year. [Podzielinski Aff. ¶ 19.]

Frankton Elementary School also sent parents periodic school newsletters, which contained information regarding The Leader in Me. [Podzielinski Aff. ¶ 19; Ex. C.] Students periodically received a Leader in Me worksheet to take home and complete with their parents. [Podzielinski Aff. ¶ 19; Ex. D.] This worksheet was typically accompanied with a short letter to parents explaining what had been discussed during the most recent LEAD day. [Id.]

## C. Plaintiff's February 10, 2020, Facebook comment.

Shortly after February 10, 2020, Principal Podzielinski and Superintendent Fields learned of a comment Plaintiff had posted on Facebook on February 10, 2020. [Podzielinski Aff. ¶ 20; Fields Aff. ¶ 12.] Defendants have submitted a copy of the entire comment thread with this Response, but for the Court's convenience, pasted below is a verbatim quotation of both Plaintiff's Facebook comment and, for context, a prior comment to which Plaintiff was responding. [Podzielinski Aff. ¶ 20; Ex. E.] The comments derived from a blog post about The Leader in Me from a website called cultofpedagogy.com [Id.]:

> Chris Metzger: So when I read this I thought...oh my goodness this sounds so much like some discipleship tools that are being marketed to churches. THIS is very concerning to me and YES it is just like a pyramid scheme. It also will most definitely label some kids as "not good enough" for leadership. I cannot believe that this is in the school. From what I read in this article, it sounds like something else that I am very familiar with that looks great on the surface but when you dig into it you will find how deceptive it actually is as it works on changing the language to change the classroom culture to get everyone into thinking all the same.

> [Plaintiff] Jennifer McWilliams: That is exactly what it is! We are in our third year and it literally has taken over EVERYTHING. The Language,

awards, all bulletin-boards, the [sic] have a Committee dedicated to pushing this garbage into the community & children [sic] homes, and teachers are even being evaluated on how well they implement it. At this point I'm not even sure how you could opt your child out because it's incorporated into everything we do. We are being advised & graded on how well we use the program & next we will mentor another school to begin using it. Parents have NO CLUE

[Id.]

Plaintiff's Facebook comment greatly concerned Principal Podzielinski and concerned Superintendent Fields because it contained many statements that are not true. [Podzielinski Aff. ¶ 21; Fields Aff. ¶ 12.] To elaborate on the nature of the false statements in Plaintiff's comment:

- The evaluations of teachers at Frankton Elementary School have never included any evaluation of how teachers are implementing The Leader in Me program. In addition, at no time did Principal Podzielinski or any other Frankton Elementary School administrator observe any teacher for the purpose of an evaluation with regard to The Leader in Me. [Podzielinski Aff. ¶¶ 15-16.]

- No staff members at Frankton Elementary School are being graded, reviewed, or evaluated regarding their use (or non-use) of The Leader in Me program. [Podzielinski Aff. ¶ 17.]

- Neither FLCS nor Frankton Elementary School is being "graded" in any way, whether by FranklinCovey, the State of Indiana, or any other individual or entity, on how Frankton Elementary School is using The Leader in Me program. [Id.]

- Frankton Elementary School has not been asked, nor does it have any intent, to mentor another school about how to begin using The Leader in Me. [Podzielinski Aff. ¶ 18.]

- As discussed above, Frankton Elementary School informs parents of how The Leader in Me is being used; it was false for Plaintiff to say parents have "NO CLUE." [Podzielinski Aff. ¶¶ 19, 25.]

- Even allowing for the obviously hyperbolic use of the word *literally*, Plaintiff's Facebook comment falsely states that The Leader in Me has "taken over EVERYTHING." As described above, this is not true, for

little class time is dedicated to The Leader in Me. [Podzielinski Aff. ¶¶ 14, 26.]

Because of Plaintiff's Facebook comments, Defendants terminated her employment as Title I Interventionist on February 14, 2020. [Dkt. 1 at ¶ 41, Filing No. 1, at ECF p. 11 ] After her termination, FLCS filled the vacant Title I Interventionist position with an existing FLCS employee who had worked at another elementary school in the FLCS school system. [Fields Aff. ¶ 8.] That employee's former position has also been filed. [Id.]

### D. Additional concerns with the Plaintiff's Facebook comment and her request for preliminary injunction.

The Defendants had concerns with Plaintiff's Facebook post other than her false statements. Principal Podzielinski was concerned with Plaintiff's reference to Frankton Elementary School "pushing this garbage into the community & children homes," which she took to mean that Plaintiff had a very negative opinion of the Leader in Me program. [Podzielinski Aff. ¶ 27.] Although Principal Podzielinski is not aware that Plaintiff had done anything to undermine The Leader in Me program, Plaintiff's reference to "pushing this garbage" caused her to question whether Plaintiff might do so in the future. [Id.]

Upon reading Plaintiff's Facebook comment, Superintendent Fields was concerned that prospective applicants for academic positions at Frankton Elementary School would choose to not apply because of an apprehension that they would be evaluated on how well they implemented a non-academic, social-emotional program, i.e., The Leader in Me. [Fields Aff. ¶ 13.] He fears current employees at Frankton Elementary School would be alarmed into thinking that FLCS was going to evaluate them based on how they implemented this program and that FLCS was going to request

them to devote time and resources to mentoring another school system in using The Leader in Me. [Id.]

Principal Podzielinski is concerned about the disruption that will be caused if Plaintiff were ordered to be re-hired. [Podzielinski Aff. ¶ 28.] Plaintiff's Facebook comment caused considerable consternation among the staff at Frankton Elementary School. [Id.] The school was scheduled to have a Family Leadership night within a few weeks after February 14, 2020, that would include a discussion of The Leader in Me program and how it was working. [Id.] However, after Plaintiff published her Facebook comment, many staff were concerned about holding the Family Leadership Night, including concerns of safety and possible disruptions that might erupt, and did not want to participate. [Id.] The event was postponed. [Id.] Principal Podzielinski also believes rehiring Plaintiff would cause substantial disruption among staff because of the false statements Plaintiff wrote in her Facebook comment. [Id.] Staff members would be uncomfortable talking to and around Plaintiff for fear that their conversations would be posted on Facebook. [Id.] Staff members are also concerned that inaccurate information is being conveyed about what is being discussed with students with regard to developing leadership skills and behavior. [Id.]

Superintendent Fields also has concerns unique to his position as Superintendent and as its chief operating officer. If FLCS were ordered to rehire Plaintiff, FLCS would have to terminate the employment of another individual, for the Title I grant money FLCS receives would not accommodate rehiring Plaintiff without simultaneously termination of another Title I Interventionist's employment. [Fields Aff. ¶ 9.] There is no provision in FLCS's budget for FLCS to rehire Plaintiff without this occurring, nor

has FLCS ever used general funds (i.e., funds received from sources other than Title I grants) to pay Title I Interventionists. [Id.]

# Argument

### A. The Court should apply the typical preliminary injunction standard to Plaintiff's retaliation claim.

"[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008). This Court must analyze a motion for preliminary injunction "in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council*, 549 F.3d at 1086. To survive the threshold phase, Plaintiff must prove by a preponderance of the evidence: (1) a likelihood of success on the merits, (2) that absent a preliminary injunction, she will suffer irreparable harm in the interim period before final resolution of her claims, and (3) that traditional legal remedies would be inadequate. *See id.* If Plaintiff fails to demonstrate any of these threshold requirements, the Court must deny the request for an injunction. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If, however, the Court determines that Plaintiff has passed the initial threshold, then the Court must move to the balancing phase of the analysis. *Id.*

In the balancing phase of the analysis, the court "must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986). This is essentially a balancing of the equities. *Id.* "Specifically, the court weighs the irreparable harm that the plaintiff would endure without the protection of the

preliminary injunction against any irreparable harm the defendant would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council*, 549 F.3d at 1086. This requires a sliding-scale approach: "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" *Id.* (quoting *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). This balancing process should also consider any effects that granting or denying the preliminary injunction would have on nonparties (which courts have termed the "public interest"). *Girl Scouts of Manitou Council*, 549 F.3d at 1086. Ultimately, this Court is tasked with arriving "at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case.'" *Id.* (quoting *Lawson Products*, 782 F.2d at 1436).

Plaintiff contends the Court should depart from this standard analysis. Plaintiff alleges that the likelihood of her success on the merits should be the determinative factor because "'even short deprivations of First Amendment rights constitute irreparable harm,' and the public interest is not harmed by preliminarily enjoining unconstitutional actions by the government." [Dkt. 8 at 4 (citing *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), Filing No. 8, at ECF p. 4 ]. The Defendants respectfully submit that the standard advocated by the Plaintiff is not appropriate for this species of a First Amendment case.

Plaintiff cites three cases to support her position. All are distinguishable from this one because none involves a retaliation claim. In *Higher Soc'y of Indiana v. Tippecanoe Cty., Indiana*, the plaintiff sought permission from Tippecanoe County to hold a rally at the county courthouse. 858 F.3d 1113 (7th Cir. 2017). The County denied the request

based on its own policy regarding the use of the courthouse grounds. The plaintiff sued, challenging the constitutionality of the County's policy and seeking a preliminary injunction to allow the group to hold rallies during the pendency of the case.

In *Am. Civil Liberties Union of Ill. v. Alvarez*, the ACLU wanted to implement a police accountability program where its members would make audiovisual recordings of police while the police performed their duties. 679 F.3d 583 (7th Cir. 2012). Illinois had enacted legislation making it a felony to audio record "all or any part of any conversation" unless all parties consented. The ACLU challenged the statute and sought a preliminary injunction to preclude its enforcement while the ACLU and the State litigated the merits of the constitutional challenge.

Plaintiff also cites *Korte v. Sebelius*, where the plaintiffs contended that the contraception coverage mandate in the Affordable Care Act violated their rights under the free exercise clause and the Religious Freedom Restoration Act. 735 F.3d 654, 666 (7th Cir. 2013). The plaintiffs sought a preliminary injunction precluding the enforcement of the mandate while the case proceeded.

In all three cases, plaintiffs alleged they were facing ongoing infringements of their First Amendment rights, thus rendering money damages an insufficient remedy. In all three cases, it was apparent why "even short deprivations of First Amendment rights [would] constitute irreparable harm." *Am. Civil Liberties Union of Ill.*, 679 F.3d at 589-90. Here, however, Plaintiff is not alleging any current, ongoing, or future deprivation of her First Amendment rights. She instead has brought a First Amendment *retaliation* claim, alleging she was terminated after posting comments on social media. Assuming Plaintiff proves that her First Amendment rights were violated by the School

14

terminating her employment, her harm is not irreparable. Money damages are available for any compensation she loses as a result of the School's actions.

Further, the undersigned counsel could not find any case where the Seventh Circuit has applied Plaintiff's proposed preliminary injunction standard to a First Amendment retaliation case. In *Shondel v. McDermott*, 775 F.2d 859 (7th Cir. 1985), a panel of the Seventh Circuit suggested that in a First Amendment retaliation case, a plaintiff seeking reinstatement of employment must show both a First Amendment violation and additional irreparable harm, *id.* at 867, and that, generally speaking, a "very strong showing" of irreparable harm may be required for a preliminary injunction that orders a government employee reinstated. *Id.; accord American Postal Workers Union, AFL—CIO v. United States Postal Service*, 766 F.2d 715, 722 (2d Cir. 1985) (requiring a showing of irreparable harm apart from a prior alleged deprivation of First Amendment rights unless immediate relief is only form of relief available); *Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir.1997) ("In this circuit, no presumption of irreparable harm arises in a First Amendment retaliation claim ...."); *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir.1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits."); *but see Greer v. Amesqua*, 22 F. Supp. 2d 916, 923-925 (W.D. Wis. 1998) (a district court decision from the Seventh Circuit discussing a Circuit split on this issue and ultimately applying a standard similar to what Plaintiff advocates for).

Plaintiff is not facing ongoing deprivations of her First Amendment rights. Therefore, the standard she asks the Court to apply is inapposite, for it is based on the principle that "short deprivations of First Amendment rights constitute irreparable

harm." That is not occurring here. And because Plaintiff is seeking immediate reinstatement—a drastic remedy that would involve the Court ordering the Defendants to rehire an at-will employee who had labeled an aspect of her employer's curricula as "garbage"—her motion should be held to the standard typically used for preliminary injunctions.

## B.  Plaintiff is not entitled to a preliminary injunction.

Plaintiff must clear several hurdles to obtain a preliminary injunction. She cannot overcome any. She cannot prove by a preponderance of the evidence she (1) is likely to succeed on the merits; (2) will suffer irreparable harm in the absence of a preliminary injunction; and (3) lacks adequate legal remedies. Moreover, even assuming for argument's sake that she could establish these elements, the harm to FLCS in imposing a preliminarily injunction greatly outweighs any harm to Plaintiff if none is entered.

### 1.  Plaintiff cannot meet her burden on the three-prong standard that should apply to her motion.

As discussed above, the parties disagree on what test the Court should apply to Plaintiff's motion. The Plaintiff argues she need to prove only that she is likely to succeed on the merits. The Defendants disagree. However, for reasons stated below, this disagreement is academic because Plaintiff cannot prove she is likely to succeed on the merits of her retaliation claim.

#### a. Plaintiff cannot establish a likelihood of success on the merits.

The Defendants agree with Plaintiff that *Pickering v. Bd. Of Educ.*, 391 U.S. 563 (1968) is the foundational precedent on the questions raised by Plaintiff's claim. But Plaintiff cannot succeed under *Pickering* and its progeny. This is because, first, her Facebook comment is not entitled to *Pickering* balancing at all; it was not, in other

words, speech protected by the First Amendment because it contained several false statements. But, second, even if the Court applies the *Pickering* balancing test, the factors fall in Defendants' favor.

> **1. Plaintiff's statements were false and therefore neither First Amendment protections nor *Pickering* balancing applies.**

As stated, Defendants agree that *Pickering* is the governing precedent. But Plaintiff ignores the actual holding in *Pickering*, which in this case is dispositive: "In sum, we hold that, in a case such as this, *absent proof of false statements knowingly or recklessly made by him*, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." 391 U.S. at 574 (emphasis added); *see also* Brenner v. Brown, 36 F.3d 18, 20 (7th Cir. 1994) (stating that even employee speech that involves a matter of public concern "is not protected where it is made with a reckless disregard for the truth"); *Swetlik v. Crawford*, 738 F.3d 818, 828 (7th Cir. 2013) (stating an employer may defeat a First Amendment retaliation claim if "supervisors reasonably believed, after an adequate investigation, that [the employee's] testimony was false, even if it actually was true") (quoting *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1506 (7th Cir. 1994). Whether the employee's statement is true—or even whether the employer reasonably believed it was false—is thus vital to analyzing *Pickering*-based claims. For an employer "has a greater interest in curtailing erroneous statements than correct ones, and still a greater interest in curtailing deliberate falsehoods." *Wright*, 40 F.3d at 1505 (internal citations and quotations omitted).

In *Pickering,* a teacher sent a letter to the newspaper criticizing how the school board and superintendent had handled issues of public funding and allocated financial

resources. 391 U.S. at 566. The school board fired the teacher for publishing the letter after determining that the teacher's letter contained false statements. *Id.* at 567. The Supreme Court held that public employees do not altogether relinquish their First Amendment rights to comment on matters of public interest. *Id.* at 568. The Court articulated several factors that should be considered in balancing government employees' interests, as citizens, to speak on matters of public concern with the government's interest, as an employer, to effectively perform public services through those same employees. *Id.*

But overarching the Court's analysis in *Pickering* was an assumption that this balancing test would only be pertinent if the employee's speech was true, or at least made with a sincere belief that it was true. In fact, the school board terminated the teacher because it determined his letter was false; on review, the Supreme Court determined the teacher's statements were either largely a matter of subjectivity (i.e., were not capable of being true or false) or easily shown erroneous. *Id.* at 569-572. Given this determination, the Supreme Court concluded it should balance the competing interests of the teacher and the school board.

Considering how important this threshold determination was to the Court's analysis in *Pickering*—it is even imbedded in the holding, *id.* at 574—it is conspicuous that the Plaintiff does not provide this Court a copy of her Facebook comment or make any attempt to prove that the various assertions in her comment were true. (Instead, in her Complaint Plaintiff provides a bullet-point summary and claims her comment "mirrored" the summary. (Dkt. 1 ¶¶ 30, 34, Filing No. 1, at ECF pp. 8-9)) It is difficult for Defendants to understand how Plaintiff can believe that she has demonstrated a likelihood of success on the merits when she has not provided the Court a copy of her

speech at issue, not to mention that she has ignored a critical component of the holding from the main case on which she relies.

Plaintiff's Facebook comment contains at least five false statements. That these statements were false was clear to the Defendants immediately given their knowledge of FLCS' and Frankton Elementary School's operations.

First, teachers are not evaluated on whether or how they implement The Leader in Me program. Yet Plaintiff states unequivocally in her Facebook comment that "teachers are even being evaluated on how well they implement it." Not only is this statement false, it is not a statement that contains any subjectivity or speculation. It is simply wrong and Plaintiff, given the length and nature of her employment, was in a position to know it was false. At the very least, it was reckless, for surely Plaintiff realized that the average person, aware of Plaintiff's employment, would assume that Plaintiff would know how staff at Frankton Elementary School were being evaluated. As Plaintiff acknowledges in her brief, speech should not receive First Amendment protection where "a teacher has carelessly made false statements about matters so closely related to the day-to-day operations of the schools that any harmful impact on the public would be difficult to counter because of the teacher's presumed greater access to the real facts." (Dkt. 8, at 10, Filing No. 8, at ECF p. 10 (quoting *Pickering*, 391 U.S. at 572).)

Second, Plaintiff stated, again unequivocally, "We are being advised & graded on how well we use the program." Assuming[2] she is referring to the school itself, this is

---

[2] It is possible to interpret this statement as Plaintiff stating that the staff (not the school itself) is being graded on how well they use the program. If so, this would

false. Neither FCLS nor Frankton Elementary School are being "graded" on how The Leader in Me program is being used. This is also a statement a member of the public would reasonably assume Plaintiff made based on information she knew as an employee of the school.

Third, Plaintiff stated, again unequivocally, that "we will mentor another school to begin using it." This is false. Frankton Elementary School has not been asked, nor does it have any intent, to mentor another school about how to use The Leader in Me program. This too is a statement cloaked with credibility given Plaintiff's employment.

Fourth, Plaintiff stated that "Parents have NO CLUE." Granted, this statement involves some conjecture as to what parents in the Frankton community know or do not know. It is false, nevertheless. The Frankton Elementary School administration had taken several steps to inform parents of its use of The Leader in Me program. The Leader in Me program is referenced in the Parent/Student handbook. Frankton Elementary School conducted a fundraiser explicitly to raise funds to offset costs associated with The Leader in Me. The school's administration sent home periodic newsletters that referenced The Leader in Me and sent home short letters, accompanied by worksheets, discussing The Leader in Me. This statement likewise is one where the reasonable reader would assume Plaintiff knew what she was talking about because Plaintiff was both an employee at Frankton Elementary School and a parent of one of its students. Thus, Plaintiff was distinctly able to compare how The Leader in Me was being

---

essentially be a restatement of her comment that the teachers were being evaluated on how well they implemented the program, which, again, is false.

used at Frankton Elementary School with what information the school was sharing with parents.

Lastly, Plaintiff stated that The Leader in Me "literally has taken over EVERYTHING." This statement is hyperbolic, but even allowing Plaintiff a license to exaggerate, it is false. The Leader in Me is not an academic program. Little class time is devoted to The Leader in Me. Nor can Plaintiff's statement be squared with reality, as it is particularly misleading when paired with her affirmation that The Leader in Me is designed to "change[] the language to change the classroom culture to get everyone into thinking all the same."

For these reasons, Plaintiff cannot establish by a preponderance of the evidence that she is likely to succeed on the merits. At the very least—although the School does not concede the point—there will be factual issues regarding whether Plaintiff's statements were false. *Cf. Swetlik v. Crawford*, 738 F.3d 818, 827 (7th Cir. 2013) ("Whether an employee recklessly disregarded the truth in making a statement will often present a disputed factual issue.") And even if it were determined that the statements were true, Plaintiff still cannot succeed on the merits if the Defendants show they reasonably believed her statements were false. *Id.* at 828.

## 2. Even if applied, the *Pickering* balancing test tips in favor of the Defendants.

If, however, the Court determines that Plaintiff's statements should be assumed true for purposes of her motion for preliminary injunction—and Defendants respectfully submit there is no basis under the law or the evidence to make that assumption—for her to succeed on the merits, she would still have to show that the *Pickering* balancing factors fall in her favor. *See Harnishfeger v. United States,* 943 F.3d 1105, 1115 (7th Cir.

2019) (listing the *Pickering* balancing factors). In evaluating the public employer's interests under these factors, the "focus [is] on the effective functioning of the public employer's enterprise," *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1119 (7th Cir. 2013), and the "efficient fulfillment of its responsibilities to the public," *Connick v. Myers*, 461 U.S. 138, 150 (1983). Thus, reviewing courts are to defer to the government employer's "reasonable predictions" of harm to its legitimate interests. *See e.g., Waters v. Churchill*, 511 U.S. 661, 673 (1994) ("[W]e have given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern . . . ."); *Craig*, 736 F.3d at 1119 (explaining that the government's "reasonable predictions of disruption" are given "substantial weight" (internal quotation marks omitted)).

But the government employer need not point to actual harm. *See, e.g., Connick*, 461 U.S. at 152 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."). Instead the employer need only show that "the restrictions it imposes [are] directed at speech that has some potential to affect the entity's operations." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

Plaintiff's speech caused and is likely to cause additional disharmony among co-workers. As shown by the affidavit of Principal Podzielinski, Frankton Elementary School cancelled an event shortly after Plaintiff published her Facebook comment due to staff concerns about becoming embroiled in the controversy. It is axiomatic that an employee spreading a false report that teachers will be evaluated on The Leader in Me and requested to mentor another school on the program would cause problems in maintaining harmony among the Frankton Elementary School staff. Moreover, as

shown by the affidavit of Superintendent Fields, FLCS is concerned that prospective teacher applicants may shy away from applying out of a concern that Frankton Elementary School is an outlier school.

In addition, Plaintiff, charged with working on reading skills with at-risk students, was employed in a position where a high level of trust and confidence is needed between instructor and principal. While it has not "literally taken over EVERYTHING," The Leader in Me is an important aspect of the Frankton Elementary School culture. Principal Podzielinski is right to be concerned about an employee faithfully facilitating discussion during LEAD days who has labeled the program "garbage" and agreed with another individual's opinion that the program is deceitful. "A school district is entitled to put in its classrooms teachers who share its education philosophy." *Wales v. Board of Educ. Of Community Unit School Dist. 300*, 120 F.3d 82, 85 (7th Cir. 1997). Also, given Plaintiff's position as a Title I Interventionist at Frankton Elementary School and how she presented her Facebook comment as based on her own experience as an employee, she should not, at least for purposes of *Pickering* balancing, be regarded as a member of the general public. Finally, that Plaintiff's statements were false also weighs against her for purposes of *Pickering* balancing. *Accord Johnson v. Multnomah County*, 48 F.3d 420, 424 (9th Cir. 1995) ("[T]he falseness of the statements [at issue] should be considered . . . as part of the Pickering balance.")

For all these reasons, Plaintiff is not likely to succeed on the merits. Her speech at issue was false, and therefore, *Pickering* balancing is unnecessary. But even if *Pickering* balancing is applied, the scale falls in the Defendant's favor. Because she is not likely to

succeed on the merits, Plaintiff's motion fails regardless of which preliminary injunction standard the Court applies.

> **b. Plaintiff cannot establish that she will suffer irreparable harm if a preliminary injunction is not entered, nor can she establish that traditional legal remedies are inadequate.**

Notwithstanding the above, even granting for argument's sake that Plaintiff is likely to succeed on the merits, her motion should still be denied because she cannot show that (a) absent a preliminary injunction, she will suffer irreparable harm in the interim period prior to final resolution of her claims, and that (b) traditional legal remedies would be inadequate. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086. The reasons why have been previewed above in Defendants' discussion regarding why the full, three-pronged preliminary injunction test should be used, but Defendants will briefly reiterate.

Plaintiff will not suffer irreparable harm. Unlike a plaintiff seeking the right to speak in the face of a statute, policy, or threat of termination, nothing prohibits Plaintiff from speaking now.[3] The Defendants appreciate there is some irony in this argument—it is because they terminated the Plaintiff's employment that she may speak out regarding The Leader in Me. Nonetheless, that the Plaintiff is no longer employed cannot be

---

[3] Indeed, since her termination Plaintiff has hardly suffered a deprivation. If anything, her complaints about The Leader in Me have become more strident. In a YouTube post dated February 17, 2020, and titled "Indiana Teacher fired for posting article about indoctrination taking place in the schools!", Plaintiff asserts, among other things, "My school is currently in the third year of its [social-emotional learning] program called Leader in Me. It is used to educate what they call 'the whole child' through language manipulation, role playing, and influence of morals and values. As a teacher and a parent, I find this program to be very disturbing because these things should be taught by parents." *See* https://www.gofundme.com/f/1whpfyyuw0 (last visited June 27, 2020).

ignored and is an important part of the Court's analysis, for it means that she is not suffering any ongoing deprivation of her First Amendment rights. It dovetails with why Plaintiff cannot show that traditional legal remedies would be inadequate. If Plaintiff shows that her First Amendment rights were violated, then she can seek the traditional legal remedies of money damages.

### 2. The harm to the Defendants outweighs the harm to the Plaintiff if the preliminary injunction is granted.

Even if the Plaintiff survives the hurdles set forth above for obtaining a preliminary injunction, the Defendants submit that it still should not be entered because the harm Defendants would experience if one is entered outweighs the harm to the Plaintiff if one is not. To recap, even if a plaintiff has shown that she can satisfy the three-prong test, she must also show that the harm to her in denying the motion outweighs the harm to the defendant if the motion is granted. In this analysis, the court must balance the nature and degree of plaintiff's injury, the likelihood of her prevailing at trial, the possible injury to the defendant if the injunction is granted, and the public interest. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986). This balancing test involves a sliding scale based on how likely it is the plaintiff is to win. *Girl Scouts of Manitou Council*, 549 F.3d at 1086. The interests of nonparties should also be considered in this balancing test. *Id.*

Plaintiff was an at-will employee. If FLCS is ordered to rehire her, it will create a near impossible human resources dilemma: FLCS will be required to rehire, and presumably, keep employed indefinitely, an employee who it could otherwise terminate "at will, with or without reason." *Harris v. Brewer*, 49 N.E.3d 632, 639 (Ind. Ct. App. 2015). This is untenable, particularly when FLCS' resources are limited by the public fisc

and when the Plaintiff's prior compensation was only made possible by Title I grant funding, which, since the termination of Plaintiff's employment, has been used to employ a different individual.

In addition, if FLCS is ordered to rehire Plaintiff, and it is later determined that the Defendants did not violate her First Amendment rights, then for the duration of the case it will have had to employ a Title I Interventionist who made several false statements about Frankton Elementary School's operations and its curricula and who Defendants were justified to terminate. This is problematic:

> To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

*Connick v. Myers*, 461 U.S. 138, 151 (1983) (*quoting* *Arnett v. Kennedy*, 416 U.S. 134, 168 (1974) (Powell, J., concurring in part).

Respectfully, the harm to an employer forced to employ individuals who made false statements about the nature of their employer's business is immeasurable, and here, that harm is not only to the employer, but also the public that employer serves. One can foresee how this would embolden other employees to make false or misleading statements and, generally, cause upheaval among Frankton Elementary School staff.

Nonparties' interests are also relevant to the balancing test. If Plaintiff is ordered to be rehired, it will require the termination of at least one other individual's employment. It will also cause discord among Frankton Elementary School staff, which cannot inure to the benefit of the school's students.

Conversely, there is no harm to the Plaintiff if the preliminary injunction is not granted and it is later determined that the Defendant violated her First Amendment rights. As the lawsuit proceeds, she may speak[4] and she will be vindicated if the lawsuit ends with a determination in her favor. She can also seek compensatory damages for any compensation she was deprived of, subject to her obligation to mitigate her damages.

## Conclusion

For reasons stated, the Court should deny Plaintiff's Motion for Preliminary Injunction.

Respectfully Submitted,

*/s/Alexander P. Pinegar*
Alexander P. Pinegar, Atty. No. 26543-49
Brent R. Borg, Atty. No. 27415-29
Church Church Hittle + Antrim
Two North Ninth Street
Noblesville, IN  46060
317-773-2190
apinegar@cchalaw.com
bborg@cchalaw.com
*Attorneys for Defendants*

---

[4] There is even a possible chilling effect to Plaintiff's speech if the Court orders her reemployed. It is not difficult to foresee Plaintiff being concerned, upon ordered rehire, about what she is permitted to say and deciding to err on the side of caution. That concern does not exist if the Court denies a preliminary injunction.

## **CERTIFICATE OF SERVICE**

I certify that on June 29, 2020, I electronically filed a true and exact copy of the foregoing via the Court's Electronic filing system. Notice of this filing was sent to the following counsel of record via the Court's Electronic filing system:

> James Bopp, Jr.
> Melena S. Siebert
> THE BOPP LAW FIRM, PC
> 1 South Sixth Street
> Terre Haute, IN 47807-3510
> jboppjr@aol.com
> msiebert@bopplaw.com

*/s/ Alexander P. Pinegar*
Alexander P. Pinegar, Atty. No. 26543-49