UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER MCWILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01419-JPH-TAB |
| | ) |
| FRANKTON-LAPEL COMMUNITY SCHOOLS, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

Jennifer McWilliams, who was terminated from her position as a Title I Interventionist at Frankton-Lapel Community Schools (FLCS), seeks a preliminary injunction to get her job back and expunge her employment record. It's undisputed FLCS terminated Ms. McWilliams's employment based on statements she posted on Facebook on February 10, 2020, regarding the FLCS's use of a program called *The Leader in Me*. Ms. McWilliams claims that her statements were protected speech under the First Amendment, so her termination was unlawful. Because Ms. McWilliams has not satisfied the threshold requirements for a preliminary injunction, her motion for preliminary injunction is **DENIED**. Dkt. [7].

# I.
# Facts and Background

Ms. McWilliams was employed by FLCS as a Title I Interventionist from August 2019 through February 14, 2020. Dkt. 36-1 at 1 (¶ 3). FLCS terminated her employment because of statements she made on Facebook on February 10, 2020 (the "Facebook Comment").[1] *See* dkt. 1 at 9–11 (¶¶ 34–41).

While Ms. McWilliams was employed with FLCS, the school utilized a program developed by FranklinCovey Education called *The Leader in Me*. Dkt. 36-1 at 1 (¶ 4). *The Leader in Me* program emphasizes the following seven habits of leadership and behavior:

   1.   Be proactive (you're in charge)
   2.   Begin with the end in mind (have a plan)
   3.   Put first things first (work first, then play)
   4.   Think win-win (everyone can win)
   5.   Seek first to understand, then to be understood (listen before you talk)
   6.   Synergize (together is better)
   7.   Sharpen the saw (continuous self-improvement)

Dkt. 24-2 at 3 (¶ 11).

Ms. McWilliams had concerns about *The Leader in Me* program, so she researched the program and its potential impact on the school and her child, who was attending the school at the time. Dkt. 36-1 at 1–2 (¶¶ 4–5). This research—which she conducted before making the Facebook Comment on February 10, 2020—included investigating FLCS's goal to attain a "*Leader in Me* Lighthouse School" certification. *Id.* at 2 (¶ 6).

---

[1] Facts recited in this Order are based on the evidence in the limited record currently before the Court and made solely for the purpose of ruling on Ms. McWilliams's motion for a preliminary injunction.

Ms. McWilliams reviewed FranklinCovey's description of a Lighthouse School, dkt. 36-2; the Lighthouse School Criteria, dkt. 36-3; and *The Leader in Me* Lighthouse Rubric 3.1, dkt. 36-4. A school's application for the Lighthouse School certification typically occurs four to five years after a school begins *The Leader in Me* process. Dkt. 36-2 at 1. FLCS began using *The Leader in Me* during the 2017-2018 school year. Dkt. 24-2 at 3 (¶ 11). The criteria used to evaluate whether a school should receive a Lighthouse School certification include but are not limited to: (a) "teachers are integrating leadership language into instruction and curriculum daily," dkt. 36-3 at 1; (b) "staff works together effectively to build a culture of leadership in classrooms and throughout the school," *id.*; and (c) "the school is holding events to share their leadership model with the community and other schools," *id.* at 2.

Ms. McWilliams also reviewed materials from FLCS, including a list of FLCS's upcoming events, dkt. 36-5; FLCS's teacher evaluation criteria domain 3 (teacher leadership), dkt. 36-6; and FLCS's teacher evaluation criteria domain 3.1 (contribute to school culture), dkt. 36-7. FLCS teacher evaluations include but are not limited to: (a) how effectively the teacher "contribute[s] ideas and expertise to further the school's mission and initiatives," dkt. 36-6; and (b) how effectively the teacher "[c]ontribute[s] ideas and expertise to further the school's mission and initiatives," dkt. 36-7. The FLCS evaluation materials do not reference *The Leader in Me* program or Lighthouse School certification.

Using the FranklinCovey and FLSC materials, Ms. McWilliams compared *The Leader in Me*'s goals to events occurring at the school; how *The Leader in*

3

*Me* principles had been incorporated into FLCS's operations; FLCS Principal "Ronda Podzielinski's encouragement of [FLCS] becoming certified as a Lighthouse School"; FLCS's teacher evaluation criteria; and more. Dkt. 36-1 at 5 (¶ 13).

Based on these comparisons and her research, Ms. McWilliams reached several conclusions about *The Leader in Me* and its impact on the school, including "that it would be impossible for [FLCS] to achieve certification as a Lighthouse School . . . unless the teachers were evaluated on how well they implemented the Leader in Me program (as part of the 'contributing to culture' evaluation criteria)." *Id.* at 5 (¶ 14). She also "reached the conclusion that it would be impossible for [FLCS] to be certified as a Lighthouse School . . . unless the school shared this 'leadership model' with other schools." *Id.* at 5–6 (¶ 15).

After school hours on February 10, 2020, while at home and using her personal device, Ms. McWilliams posted on her private Facebook page a link to a blog post about *The Leader in Me*. Dkt. 1 at 9–10 (¶¶ 34–35); dkt 36-1 at 7 (¶ 18). Someone named Chris Metgzer commented on this post, and Ms. McWilliams responded to his comment:

> Chris Metzger: So when I read this I thought…oh my goodness this sounds so much like some discipleship tools that are being marketed to churches. THIS is very concerning to me and YES it is just like a pyramid scheme. It also will most definitely label some kids as "not good enough" for leadership. I cannot believe that this is in the school. From what I read in this article, it sounds like something else that I am very familiar with that looks great on the surface but when you dig into it you will find how deceptive it actually is as it works on changing the language to change the classroom culture to get everyone into thinking all the same.

> Jennifer McWilliams: That is exactly what it is! We are in our third year and it literally has taken over EVERYTHING. The Language, awards, all bulletin-boards, the [sic] have a Committee dedicated to pushing this garbage into the community & children [sic] homes, and teachers are even being evaluated on how well they implement it. At this point I'm not even sure how you could opt your child out because it's incorporated into everything we do. We are being advised & graded on how well we use the program & next we will mentor another school to begin using it. Parents have NO CLUE

Dkt. 24-2 at 6–7 (¶ 20).

On February 14, 2020, FLCS officials gave Ms. McWilliams the choice to resign or be terminated. Dkt. 1 at 10 (¶ 37). Ms. McWilliams refused to resign, and so FLCS terminated her employment. *Id.* at 11 (¶ 41). FLCS does not dispute that Ms. McWilliams was fired because of the Facebook Comment, but asserts that several statements in the Facebook Comment were not true. *See* dkt. 24-1; dkt. 24-2.

Principal Podzielinski, who is responsible for evaluating FLCS's teachers, attested that "evaluations of teachers have never included any evaluation of how teachers are implementing The Leader in Me" and that "[n]o staff members at Frankton Elementary School are being graded, reviewed, or evaluated regarding their use (or non-use) of The Leader in Me program." Dkt. 24-2 at 4 (¶ 15). She further attested that FLCS "has not been asked, nor does it have any intent, to mentor another school about how to begin using The Leader in Me." *Id.* at 5 (¶ 18).

FLCS's Superintendent Robert Fields stated in his affidavit, "Ms. McWilliams stated in her Facebook comment that teachers at [FLCS] were being evaluated on how well they implemented a program known as 'The

5

Leader in Me.'  This is false.  Ms. McWilliams further stated in her Facebook comment that staff at [FLCS] were being graded on how well they used The Leader in Me and were going to mentor another school in implementing The Leader in Me program.  These statements are also false." Dkt. 24-1 at 3 (¶ 12).

In her affidavit, Ms. McWilliams explains the research she did about *The Leader in Me* program as the basis for her argument that her statements made in the Facebook Comment are true.  Dkt. 36-1 at 5–6 (¶¶ 14–16).

The Court heard oral argument on the motion during a non-evidentiary hearing on July 30, 2020.  Dkt. 40.

## II.
## Discussion

### A. Preliminary injunction standard

The parties disagree as to what Ms. McWilliams must show in order to obtain preliminary injunctive relief.  Ms. McWilliams argues that because this case involves an alleged First Amendment violation, she needs to show only some likelihood of success on the merits to be entitled to a preliminary injunction.  Dkt. 8 at 4–5; dkt. 37 at 7–9.  FLCS contends that Ms. McWilliams must make the threshold showing that is ordinarily required to obtain preliminary injunctive relief: (1) some likelihood of success on the merits of the claim; (2) no adequate remedy at law; and (3) irreparable harm if the injunction is not granted.  Dkt. 24 at 12–16.

In *Sampson v. Murray,* 415 U.S. 61 (1974), the Supreme Court required a government employee to show irreparable harm to receive a preliminary

6

injunction preventing the termination of her employment. Reversing the district court's preliminary injunction, the Court stated that the plaintiff "at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Id.* at 84.

Two years later, in *Elrod v. Burns*, the Supreme Court held patronage dismissals unconstitutional under the First and Fourteenth Amendments. 427 U.S. 347, 373 (1976). The Court noted that "First Amendment interests were either threatened or in fact being impaired at the time [injunctive] relief was sought." *Id.* In reaching its conclusion, the Court held that a party seeking a preliminary injunction to prevent a deprivation of free speech did not have to show irreparable harm because "the loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Id.*

In *Shondel v. McDermott*, the Seventh Circuit recognized a "nice question" raised by *Elrod* and *Sampson*: whether an employee who was fired because of political views in violation of the First Amendment "can obtain a preliminary injunction ordering his reinstatement without showing irreparable harm, [a] conventional prerequisite to preliminary relief."  775 F.2d 859, 866 (7th Cir. 1985). *Shondel* described *Elrod* as holding "that a litigant who asks for a preliminary injunction to prevent a deprivation of free speech need not show that he will be irreparably harmed if the injunction is denied". *Id.* at 867. *Shondel* suggested that under *Sampson*, a "very strong showing" of irreparable harm may be required for a preliminary injunction that orders a public

7

employee's reinstatement.  *Id.*  But after noting that *Elrod* did not discuss reinstatement and *Sampson* did not involve the First Amendment, the Court resolved *Shondel* on other grounds without answering the question.

Ms. McWilliams relies on *Elrod* to support her argument that she only needs to show some likelihood of success.  Dkt. 37 at 8–9.  But *Elrod* is distinguishable because it involved ongoing or threatened First Amendment violations and did not address reinstatement.  The same is true of *Higher Soc'y of Indiana v. Tippecanoe Cty., Indiana* 858 F.3d 1113 (7th Cir. 2017); *Korte v. Sebelius,* 735 F.3d 654, 666 (7th Cir. 2013); and *Am. Civil Liberties Union of Ill. v. Alvarez,* 679 F.3d 583 (7th Cir. 2012)—all deal with ongoing or threatened future First Amendment violations.  Here, Ms. McWilliams is not alleging ongoing or threatened future First Amendment violations, so these cases don't control.

Ms. McWilliams conceded at the July 30, 2020 hearing that no controlling precedent requires or permits the Court to use the lower threshold standard, but she argues that that "the Seventh Circuit has never ruled that a plaintiff must show irreparable harm in a First Amendment retaliation case." Dkt. 37 at 9.  But the Seventh Circuit has also not held that the typical threshold showing—including irreparable harm—does not apply in a First Amendment retaliation case.  Rather, the Seventh Circuit has been clear that district courts may not issue a preliminary injunction without a showing of irreparable harm and no adequate remedy at law unless a specific exception applies.  *See Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386

8

(7th Cir. 1984) ("In every case in which the plaintiff wants a preliminary injunction he must show that he has 'no adequate remedy at law,' and (unless the statute under which he is suing excuses a showing of irreparable harm . . .) that he will suffer 'irreparable harm' if the preliminary injunction is not granted.").

There are good reasons for requiring all parts of the threshold showing. "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008) (citations omitted)  "'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Goodman v. Illinois Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, (1997)) (emphasis in original).  Therefore, to be entitled to a preliminary injunction, Ms. McWilliams must make the ordinary threshold showing: (1) some likelihood of success on the merits of the claim; (2) no adequate remedy at law exists; and (3) she will suffer irreparable harm if the injunction is not granted.  *See Girl Scouts of Manitou Council*, 549 F.3d at 1086.

### B. Ms. McWilliams has not satisfied the threshold requirements for preliminary injunctive relief

#### 1. Likelihood of success on the merits

To establish a First Amendment retaliation claim, a public employee must prove that: (1) her speech was constitutionally protected; (2) she has

9

suffered a deprivation likely to deter speech; and (3) her speech was at least a motivating factor in the employer's action. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citations omitted). Only the first element—whether the Facebook Comment was constitutionally protected speech—is disputed here.

"For a public employee's speech to be protected under the First Amendment, the employee must show that: (1) [she] made the speech as a private citizen; (2) the speech addressed a matter of public concern; and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Id.* (citation omitted). The third element is known as *Pickering* balancing. *See Pickering v. Board of Education*, 391 U.S. 563 (1968).

For the first element, there is no dispute that the Facebook Comment addressed a matter of public concern. *See* dkt. 24.

On the second element, FLCS argues that Ms. McWilliams made the statements as a public employee because the Facebook Comment was based, at least in part, on information she obtained through her employment with FLCS. *Id.* at 23. But "[s]peech by citizens on matters of public concern lies at the heart of the First Amendment . . . . This remains true when speech concerns information related to or learned through public employment." *Lane v. Franks*, 573 U.S. 228, 236 (2014). Here, Ms. McWilliams posted the statements on her personal Facebook account from her personal device while at home after school hours, and she has attested that she was concerned about *The Leader in Me* as a parent of a child attending FLSC. *See* dkt. 1 at 9–10 (¶¶

10

34–35); dkt 36-1 at 2, 7 (¶¶ 5, 18). These facts support Ms. McWilliams's position that she made the Facebook Comment as a private citizen. *See Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). On the evidentiary record currently before the Court on this motion, Ms. McWilliams has established some likelihood of success in showing that the Facebook Comment was made as a private person.

As to the third element—*Pickering* balancing—the record is not sufficiently developed and there are factual disputes. FLCS contends that the Facebook Comment was not protected speech because: (1) it was false or made with reckless disregard for the truth; and (2) even if it was true, FLCS reasonably believed the Facebook Comment was false when it terminated her. Dkt. 24 at 16–24. FLCS correctly argues that either showing at trial would defeat Ms. McWilliams's claim because speech "loses its First Amendment protection if the public employee knew it was false or made it in reckless disregard of the truth," *Brenner v. Brown*, 36 F.3d 18, 20 (7th Cir. 1994), and an employer may defeat a First Amendment retaliation claim if "supervisors reasonably believed, after adequate investigation, that [the employee's speech] was false," *Swetlik*, 738 F.3d at 828. But whether a public employee's speech was false or made with a reckless disregard for the truth often presents a disputed factual issue, *id.* at 825, and this case is no exception.

At trial, FLCS would carry the burden of showing that Ms. McWilliams knew the Facebook Comment was false or that she recklessly made the Facebook comment. *See Gazarkiewicz v. Town of Kingsford Heights, Indiana*,

11

359 F.3d 933, 942 (7th Cir. 2004) ("[S]peech of public importance only loses its First Amendment protection if the public employee knew it was false or made it in reckless disregard of the truth [and] the defendants . . . carry the burden on this issue" (citation omitted)).  The Court cannot conclude at this time on the record before it, which includes conflicting affidavits, that Ms. McWilliams knew the Facebook Comment was false or that she recklessly made the Facebook comment.  Nor does the record allow the Court to conclude that the decision-makers at FLCS conducted "an adequate investigation" and "reasonably believe[d] [the Facebook Comment] to be false" at the time the termination decision was made.  *See Swetlik,* 738 F.3d at 825.  These are issues of fact that require further development of the record and weighing the credibility of witnesses.

However, likelihood of success on the merits does not end the inquiry. Ms. McWilliams must also make the threshold showings of irreparable harm and inadequacy of traditional legal remedies.

### 2. Irreparable harm and inadequacy of traditional legal remedies

Ms. McWilliams alleges that she "suffered harm by being deprived of her employment."  Dkt. 1 at 13–15 (¶¶ 52, 60, 67).  FLCS contends that she cannot establish irreparable harm.  Dkt. 24 at 24–25.  Loss of employment does not constitute irreparable injury under the preliminary injunction standard.  *See Sampson v. Murray*, 415 U.S. at 90 (explaining that the possibility of adequate compensatory or other corrective relief at a later date weighs heavily against a claim of irreparable harm).  *See also E. St. Louis Laborers' Local 100 v. Bellon*

*Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) ("A permanent loss of employment, standing alone, does not equate to irreparable harm."); *Ciechon v. City of Chicago*, 634 F.2d 1055, 1057–58 (7th Cir.1980) (holding that a public employee's loss of wages, employee benefits, and opportunities for promotion during a suspension do not constitute irreparable injury and do not warrant the granting of a preliminary injunction); *Lasco v. Northern*, 733 F.2d 477 (1984) (same). In short, the loss of Ms. McWilliams's job can be remedied by equitable relief, including backpay and potentially reinstatement, if she prevails at trial.

Ms. McWilliams nevertheless argues that "[t]he irreparable harm *is* the retaliation for exercising a right guaranteed by the U.S. Constitution. The harm is assumed." Dkt. 37 at 21 (emphasis in original). She relies on *Higher Soc'y of Indiana* to contend that "even short deprivations of First Amendment rights constitute irreparable harm." 858 F.3d at 1116. But as discussed above, *Higher Soc'y of Indiana* deals with ongoing or threatened future First Amendment violations. Ms. McWilliams's alleges a First Amendment violation that occurred in the past. She has not argued or shown that she faces ongoing or threatened future actions that would interfere with her First Amendment rights. Nor does she identify a specific exception to the irreparable harm and no adequate remedy at law requirements. *See Roland Machinery Co.*, 749 F.2d at 386.

Regarding her request to expunge her employment record, Ms. McWilliams contends that "[t]he harm to her employment prospects is ongoing,

13

and the record of her termination limits her ability to find other employment." Dkt. 37 at 21. However, there is no evidence in the record showing that Ms. McWilliams has suffered harm in seeking future employment as a result of FLCS's employment records. Moreover, there is no evidence in the record showing what FLCS's records say about the reason for Ms. McWilliams's termination, or whether FLCS would disclose that information in response to an employment verification request.

The Court therefore finds that Ms. McWilliams has not established irreparable harm or an absence of an adequate remedy at law. Accordingly, Ms. McWilliams has not met her burden to show that the Court should grant the extraordinary remedy of a preliminary injunction.

### III.
### Conclusion

For these reasons, Ms. McWilliams's motion for a preliminary injunction is **DENIED**. Dkt. [7].

**SO ORDERED.**

Date: 8/14/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

James Bopp, Jr.
BOPP COLESON & BOSTROM
jboppjr@aol.com

Brent R. Borg
CHURCH CHURCH HITTLE & ANTRIM (Fishers)
bborg@cchalaw.com

Alexander Phillip Pinegar
CHURCH CHURCH HITTLE & ANTRIM
apinegar@cchalaw.com

Melena Sue Siebert
THE BOPP LAW FIRM, PC
msiebert@bopplaw.com